IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| JAMIL BAHLOULI, | § § § | |
| *Petitioner*, | § § § | |
| v. | § § § | |
| PAM BONDI, in her official capacity as Attorney General of the United States; KRISTI LYNN NOEM, in her official capacity as Secretary of the Department of Homeland Security; TODD M. LYONS, in his official capacity as Director of ICE; PAUL MCBRIDE, in his official capacity as Field Office Director of ICE Enforcement and Removal Operations Houston Field Office; and ALEXANDER SANCHEZ, in his official capacity as Warden of the IAH Polk Adult Detention Facility, | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 9:25-CV-00321 JUDGE MICHAEL J. TRUNCALE |
| *Respondents*. | § § | |

### ORDER DENYING PETITIONER'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court is Petitioner Jamil Bahlouli's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") [Dkt. 2]. For the following reasons, the Motion is **DENIED**.

### I. BACKGROUND

Petitioner Jamil Bahlouli ("Bahlouli") is an Iranian national who first entered the United States in 2019. [Dkt. 2 at 2]. On October 19, 2020, Bahlouli was ordered removed but granted withholding of removal from Iran. *Id.* For a period of time between October 2021 and December 2023 he resided in Canada. [Dkt. 1 at 2]. He reentered the United States without authorization, a federal misdemeanor, in December 2023. *Id.* Bahlouli was released in January 2024 and he went

1

to Austin, Texas. *Id.* On June 25, 2025, following the June 21 bombing of Iran, United States Immigration and Customs Enforcement ("ICE") arrested Bahlouli at his apartment based on a federal charge of hampering removal.[1] [Dkt. 2 at 2].

On December 2, 2025, Bahlouli brought a habeas corpus petition, claiming (1) a violation of the Fifth Amendment's Due Process Clause because of his prolonged detention, and (2) a violation of 8 U.S.C. § 1231(a) because his removal is not reasonably foreseeable. [Dkt. 1 at ¶¶ 30–37]. On December 4, 2025, Bahlouli filed this Motion for a temporary restraining order requiring ICE to release him immediately. [Dkt. 2 at 1].

## II. LEGAL STANDARD

The general purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). Temporary restraining orders are "a highly accelerated and temporary form of preliminary injunctive relief." *Lee v. Verizon Commc'ns, Inc.*, No. 3:12–CV–4834–D, 2012 WL 6089041, at *1 n.2 (N.D. Tex. Dec. 7, 2012). As such, the party moving for a temporary restraining order must satisfy the same four requirements as a party requesting a regular preliminary injunction. *Bowling v. Dahlheimer*, No. 4:18-CV-00610-ALM-CAN, 2018 WL 6582826, at *1 (E.D. Tex. Oct. 3, 2018).

There are four factors a plaintiff must show before a temporary restraining order will issue. First, the moving party must demonstrate a substantial likelihood of success on the merits. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). Second, the moving party must demonstrate a substantial risk of suffering irreparable harm for which there is no adequate legal

---

[1] This charge has since been dismissed. *See* Dkt. 2 at 4 (citing Dkt. 1-6).

remedy. *Id.*; *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("[H]arm is irreparable where there is no adequate remedy at law, such as money damages."). Third, the threatened harm to the moving party must outweigh the injury that a temporary restraining order would inflict upon the opposing party. *Anderson*, 556 F.3d at 360. Finally, the requested temporary restraining order must not disserve the public interest. *Id.*

### III. DISCUSSION

The Court begins and ends its analysis with the first factor—likelihood of success on the merits.

**A.    Substantial Likelihood of Success on the Merits**

To assess likelihood of success on the merits, courts look to "standards provided by the substantive law." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). The moving party must present a prima facie case, but need not prove entitlement to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). Bahlouli filed two claims with his petition: (1) a violation of the Fifth Amendment's due process clause because of his prolonged detention, and (2) a violation of 8 U.S.C. § 1231(a) because his removal is not reasonably foreseeable. [Dkt. 1 at ¶¶ 30–37].

Bahlouli states that "ICE failed to follow its own regulation requiring notification and reasons for revocation of supervision, and affording him an opportunity to respond to the alleged violation." [Dkt. 1 at ¶ 34, citing 8 C.F.R. § 241.4.]. According to Bahlouli this failure, combined with the fact that ICE has not found another country to accept him "for more than five years," amounts to a Fifth Amendment violation.[2]

---

[2] Bahlouli also reiterates this five-year argument with regard to the Section 1231(a) violation. [Dkt. 1 at ¶ 36].

3

Important for this case is the harmless error doctrine. Harmless error applies in immigration cases such as this one. *See Rangel-Betancourt v. Barr*, 820 F.App'x 253 (5th Cir. 2020) (applying harmless error in appeal from the Board of Immigration Appeals); *Williams-Igwonobe v. Gonzales*, 437 F.3d 453 (5th Cir. 2006) (applying harmless error in review of immigration decision).

Other courts in this Circuit have found that even if ICE's detention without compliance with Section 241.4, "a writ of habeas corpus would not be an inappropriate remedy." *Surovtsev v. Noem*, No. 1:25-CV-160-H, 2025 WL 3264479, at *4 (N.D. Tex. Oct. 31, 2025) (Hendrix, J.). This is because habeas relief "'may not be used to correct mere irregularities or errors of law.'" *Id* (quoting *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959)). Habeas is only to be used for release "from unlawful imprisonment or custody," and "any other purpose" is invalid. *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976); *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997). The fact that officials have "failed to follow their own policies, without more, does not constitute a violation of due process." *Iruegas-Maciel v. Dobre*, 67 F.App'x 253 (5th Cir. 2003) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

Now for the argument that ICE has not found another country to which Bahlouli will be sent. *Zadvydas v. Davis* provides that aliens pending removal pursuant to 8 U.S.C. § 1231 cannot be detained indefinitely. 533 U.S. 678, 699 (2001). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* Courts "must ask whether the detention in question exceeds a period reasonably necessary to secure removal," considering "the greater immigration-related expertise of the Executive Branch," "the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute," and "the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

As guidance, the Supreme Court assumed a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After this six month period has elapsed, the alien has the burden of demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably near future." *Id.* at 701. When those six months begin is an important question on which there is no consensus. Some district courts have assumed "that *Zadvydas*' six month period does not reset when the government detains someone, releases him from detention, and then re-detains him again." *Surovtsev*, 2025 WL 3264479 at *7 (quoting *Nguyen v. Scott*, --- F.Supp.3d ---, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025)) (cleaned up). Other district courts have disagreed. *Guerra-Castro v. Parra*, No. 1:25-CV-22487, 2025 WL 1984300 (S.D. Fla. July 17, 2025); *Thai v. Hyde*, 788 F.Supp.3d 57 (D. Mass. 2025); *Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42, 2018 WL 1321576 (M.D. Ga. Mar. 14, 2018).

As an initial matter, the Court is not persuaded that the six month clock is incapable of resetting after re-detention.[3] Bahlouli appears to conclude the six month period ended in April 2021, six months after the October 2021 removal order. [Dkt. 2 at 7]. At present, Bahlouli has been detained for less than six months. [Dkt. 2 at 1]. He still has the burden of challenging his detention. *Zadvydas*, 533 U.S. at 701.

To carry that burden, Bahlouli relies on the past to show the future: "[t]he government's track record demonstrates that removal is not foreseeable: [Bahlouli]'s removal order dates to October 19, 2020—over five years ago." [Dkt. 2 at 7 (alterations added)]. In that time, "the government has been unable to identify any third country willing to accept" him. *Id.* Furthermore, Bahlouli states that ICE has conducted no proceedings to initiate removal. *Id.* This presents two

---

[3] The Court is especially reluctant to make such an assumption in the context of a motion for a temporary restraining order.

issues: timing and lack of proceedings.

On the first issue, other courts have recognized "the lack of prior third-country removal might be salient where 'there is presently no country in the world willing to accept the petitioner.'" *Surovtsev*, 2025 WL 3264479 at *8 (quoting *Munoz-Saucedo v. Pittman*, 789 F.Supp.3d 387, 399 (D.N.J. 2025)). Bahlouli does not make such an assertion. Moreover, he fails to consider how foreign policy—which is firmly within the domain of the Executive—has changed: "the new administration [has effected] a well-known sea change in the area of third-country removals." *Id.* "In essence, turning back the clock to what could have been done before January 20, 2025 would forever bind the administration to the conduct of past administrations." *Id.*

Now for the second point: that ICE has not initiated any proceedings necessary to remove Bahlouli. This bare assertion, especially given that the six-month period has not elapsed, is not enough to show his removal is not reasonably foreseeable for purposes of either his Fifth Amendment claim or his 8 U.S.C. § 1231 argument. A temporary restraining order, especially under these circumstances, requires a much greater showing. *See Byrum*, 566 F.3d at 446. Because Bahlouli has not demonstrated a substantial likelihood of success on the merits, he is not entitled to a temporary restraining order. *See Anderson*, 556 F.3d at 360.

### IV. CONCLUSION

It is therefore **ORDERED** that Bahlouli's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. 2] is hereby **DENIED**.

**SIGNED this 5th day of December, 2025.**

Michael J. Truncale
United States District Judge